Annette Sadie **HARRIS**, Administratrix of the Estate of Eli Paul Harris, Jr., deceased, Plaintiff,

v.

**UNITED STATES** of America

and

**William O. Keathley, Defendants.**

**Civ. A. No. 4018.**

United States District Court
E. D. Virginia,
Norfolk Division.
June 19, 1963.

Gordon E. Campbell and Wayne Lustig, Norfolk, Va., for plaintiff.

Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for the United States.

MICHIE, District Judge.

Eli Paul Harris, Jr., a Commander in the Navy, was returning from a brief furlough to his station near Norfolk, Virginia. He was riding in a small car driven by his wife traveling on Azalea Road, a two-lane road. As the Harrises approached the intersection of Azalea Road with Little Creek Road, a four-lane highway, they found that they had the green light for the intersection and Mrs. Harris drove into it. Their car was hit by an ambulance owned by the United States of America traveling on Little Creek Road and running through a red light. Commander Harris was killed. His administratrix, Mrs. Harris, has brought this suit against the United States under the Virginia Death by Wrongful Act law.

■ The case was tried, of course, before the court without a jury and at the conclusion of the evidence the court found for the plaintiff and stated that the judgment would be for the maximum allowed under the Virginia statute—$35,000.00. However the court took under advisement the question of the division of the judgment among the several possible beneficiaries and also the government's claim with respect to certain payments made by the government to the widow which the government argues should constitute setoffs against the face amount of the judgment.

■ In this opinion we are really concerned largely with the latter question. There is little doubt as to the negligence of the driver of the ambulance. It is true that he had a sick man in the ambulance and was under a duty, and I believe also instructions from his superiors, to get the man to the hospital as promptly as practicable. And under certain circumstances there can be no doubt of the right of the driver to run through a red light if he first ascertains that it can safely be done. But in this case the driver did not first ascertain that he could safely go through the red light and the collision resulted.

There is considerable difference of opinion as to the speed the ambulance was traveling. But the physical situation at the intersection is such that if the driver of the ambulance had looked to his left he could undoubtedly have seen the Harris car approaching the intersection and since he had a red light against him he would have known that the Harris car had the green light and would have anticipated that it would continue. Unquestionably his failure to look to his left before entering the intersection was the proximate cause of the accident. The Harrises, travelling according to several witnesses at about twenty miles per hour, naturally could not anticipate that the ambulance driver would enter the intersection with the red light against him and before they were hit they had actually gotten past the center of the road crossing two lanes of the highway and passing beyond the median strip of the Little Creek highway into the lane in which the ambulance was traveling.

There was testimony from the driver of the ambulance and witnesses standing in the vicinity that the ambulance's siren was sounding. However several witnesses who were in cars standing at the intersection all testified that they did not hear the siren and so it may be assumed that the Harrises too did not hear it. It is therefore the judgment of the court that the accident was solely due to the negligence of the ambulance driver without any contributory negligence on the part of Mrs. Harris.

We come then to the question of the distribution of the award and the claim of the government to a set-off as to anything awarded Mrs. Harris. The plaintiff by counsel has asked that I make no award to Mrs. Harris but distribute the entire amount among the children. There are five of these children and certainly an award of $7,000.00 to each of them would not be excessive for the loss of their father—and by all the testimony a fine father with a brilliant future ahead of him. I rather suspect that I have been asked to award the entire sum to the children in the hope on the part of counsel for the plaintiff that any question as to a set-off on account of amounts paid by the government to the mother under other laws would thereby be avoided. Nevertheless I do not think I should be concerned with the reason for the request and I will therefore divide the total award of $35,000.00 in equal parts among the five children.

I do not suppose that the government will seriously argue that there should be a set-off of the amounts paid the widow under other laws against the amounts hereby awarded to the children. Nevertheless in case the government should wish to raise that point I will make a few more observations on the broad issue of government set-offs in these cases.

The case principally relied upon by the United States as to set-off is United States v. Brooks, 4 Cir., 176 F.2d 482, on remand from the United States Supreme Court (Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200). That case arose under the laws of North Carolina and under the law of North Carolina there is no limit on the amount of recovery in a suit for death by wrongful act, the law providing for recovery of "a fair and just compensation for the pecuniary injury resulting from such death." An award of $25,000.00 was made by the trial judge as such fair and just compensation but the government claimed that there should have been a deduction from the damages on account of payments made on a national service life insurance policy of $5,000.00 and on account of six month's wages amounting to $468.00 paid to the mother of the deceased under what was then 10 U.S.C.A. § 903 (now 10 U.S.C.A. § 1475). The court held that the life insurance payment should not be deducted from the amount of the judgment since the insured had in effect paid for the life insurance himself but held that the $468.00, being six month's wages payable under present 10 U.S.C.A. § 1475, should be deducted saying in United States v. Brooks, supra, 176 F.2d at p. 485:

" * * * The recovery by the administrator here was for the benefit of the father and mother of deceased. * * * Since loss of earnings resulting from death is to be included in the recovery for the benefit of the father and mother, and since the mother has already received from the government under 10 U.S.C.A. § 903 an amount equivalent to six months' earnings, we think that this amount should be deducted from the damages to be awarded. While the payment was made under the statute to the mother, and not to the father and mother jointly, we do not regard this circumstance as controlling; for, as a result of the death of the deceased, his next of kin have received this amount from the government, and it is but right that the amount recovered for them on account of his death should be credited therewith. We think that this is the clear implication of what was said by the Supreme Court in this case and that

788

it accords with the decisions of the North Carolina Supreme Court in Holland v. Southern Public Utilities Co., supra, and Hester v. Horton Motor Lines, 219 N.C. 743, 14 S.E. 2d 794. If the next of kin of deceased have received under the statute the sum of $468 on account of his death, the pecuniary damage which they have sustained is certainly less by $468 than it would otherwise have been. The fact that the recovery is by the administrator and not the next of kin is immaterial in view of the fact that the recovery is for their benefit."

It will be observed that this conclusion is based on the theory that $25,000.00 was full compensation for the death of the deceased. And this is logical since North Carolina has no maximum recovery under its death by wrongful act statute so the award presumably covered the full damages.

■ However no such inference is possible in Virginia. There is no question that this mother and five children have suffered damages far greater than the maximum award permissible under the Virginia statute—$35,000.00. Consequently the theory that the award, being for the full amount of damages, should be reduced by any amounts otherwise paid by the government to the injured parties simply has no application in Virginia when the damages are found to exceed the statutory maximum awardable. And I certainly find that to be the case here.

In Knecht v. United States, 242 F.2d 929, the Third Circuit, applying the law of Alaska, decided this same question adversely to the government's contention. The death limit in Alaska at the time was $15,000.00. The District Judge found that the loss to the decedent's family from his death had a present value of $55,000.00. (I do not find it necessary in this case to undertake to reduce the loss to this family to specific figures as it was obviously far in excess of the $35,000.00 judgment plus the payments made by the

United States under other statutes and claimed as a deduction.) The court found that the United States under other provisions of the law would pay the family $16,075.00 and possibly more. This was claimed by the United States as a set-off and allowed by the District Judge. The Court of Appeals reversed, however, Judge Goodrich saying at p. 931:

"We may now take it as fairly clear that the United States is not held to pay twice for the same loss where an injury sustained by someone is compensable under the Tort Claims Act and some other legislative provision. This point was suggested by the Court's opinion in the Brooks case, supra, when Mr. Justice Murphy said:

" 'But this does not mean that the amount payable under servicemen's benefit laws should not be deducted, or taken into consideration, when the serviceman obtains judgment under the Tort Claims Act. Without the benefit of argument in this Court, or discussion of the matter in the Court of Appeals, we now see no indication that Congress meant the United States to pay twice for the same injury. * * *' 337 U.S. at page 53, 69 S.Ct. at page 921, 93 L.Ed. 1200."

" * * * This is an application of a general principle that one is not obliged to pay double compensation for the same injury. Thus if a plaintiff recovers judgment against several tort-feasors for the same tort he can collect only once, Restatement, Judgments § 95 (1942); Restatement, Restitution § 147(3) (1937). But on the plaintiff's theory here the government will not be called upon to pay twice for the same injury. The pecuniary loss to the family is $55,000. The government's benefits are $16,075. The $16,000. plus the $15,000. for the death by wrongful act judgment will

still leave the plaintiff uncompensated for a very appreciable amount. Thus, there is no overreaching, no double payment and no unfairness to the United States."

The situation here is the same as that in the Knecht case and I am certainly in accord with the reasoning in the Knecht case. Consequently no set-off will be allowed.

An order will be entered accordingly.